1

2                          UNITED STATES DISTRICT COURT

3                        NORTHERN DISTRICT OF CALIFORNIA

4

5    DENNIS SONG, et al.,                        Case No.  19-cv-02732-SBA

6                         Plaintiffs,
                                                 **ORDER GRANTING DEFENDANTS'**
7              v.                                 **MOTION FOR SUMMARY**
                                                 **JUDGMENT**
8    THE REGENTS OF THE UNIVERSITY
     OF CALIFORNIA, et al.,                       Re: Dkt. No. 28
9
                          Defendants.

10

11        Plaintiff Dennis Song, DDS, MD ("Plaintiff" or "Dr. Song") brings this action against

12   Defendants the Regents of the University of California, operating as the University of California

13   San Francisco, School of Dentistry (the "University" or "UCSF"); Brian Bast; and John

14   Featherstone (collectively, "Defendants").[1]  Dr. Song served as a volunteer clinical professor at the

15   School of Dentistry's Department of Oral and Maxillofacial Surgery (the "Department" or

16   "DOMS") from 2007 to 2017.  He alleges that Defendants retaliated against him by failing to

17   renew his appointment for the 2017-2018 academic year after he engaged in activity protected

18   under the First Amendment of the United States Constitution.  Presently before the Court is

19   Defendants' Motion for Summary Judgment.  Having read and considered the papers filed in

20   connection with this matter and being fully informed, the Court hereby GRANTS Defendants'

21   motion, for the reasons set forth below.  The Court, in its discretion, finds this matter suitable for

22   resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

23   **I.      EVIDENTIARY OBJECTIONS**

24        Before summarizing the evidence, the Court addresses Defendants' evidentiary objections.

25   Defendants argue that most of the exhibits offered by Dr. Song in support of his opposition brief

26

27   _____

28   [1] The Complaint also names Tina Valaris as a plaintiff; however, her claims were settled by the parties at mediation.  See Mot. at 1 n.1, Dkt. No. 28.  Only Dr. Song's claims remain.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    are inadmissible because they are presented through the declaration of counsel, as opposed to

2    witnesses, and thus lack foundation.  Reply at 1-2 (citing Fed. R. Evid. 602), Dkt. 36.  In making

3    this objection, Defendants rely on Clark v. County of Tulare, 755 F. Supp. 2d 1075 (E.D. Cal.

4    2010), wherein the district court stated that "[t]he Ninth Circuit 'has consistently held that

5    documents which have not had a proper foundation laid to authenticate them cannot support a

6    motion for summary judgment.'"  Id. at 1084 (citing Canada v. Blain's Helicopters, Inc., 831 F.2d

7    920, 925 (9th Cir.1987)).

8           The standard set forth in Clark is outdated, however, as "Rule 56 was amended in 2010 to

9    eliminate the unequivocal requirement that evidence submitted at summary judgment must be

10   authenticated[.]"  Romero v. Nev. Dep't of Corr., 673 F. App'x 641, 644 (9th Cir. 2016); Dinkins

11   v. Schinzel, 362 F. Supp. 3d 916, 923 & n.25 (D. Nev. 2019); see also Fed. R. Civ. P. 56 advisory

12   comm. note to 2010 amendment.  The Rule now "mandate[s] only that the *substance* of the

13   proffered evidence would be admissible at trial."  Dinkins, 362 F. Supp. at 923 (emphasis in

14   original); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute

15   a fact *cannot be* presented in a form that would be admissible in evidence.") (emphasis added).

16   Having reviewed Dr. Song's exhibits, the Court is satisfied that they could be presented in

17   admissible form at trial.  Defendants do not argue otherwise.

18          Accordingly, Dr. Song may rely on the exhibits in opposing summary judgment.

19   Nevertheless, for the reasons explained below, Dr. Song does not create a triable issue of fact.

20   **II.     FACTUAL BACKGROUND**

21          **A.     Non-Renewal of Dr. Song's Appointment to DOMS**

22          Dr. Song began working as a volunteer assistant clinical professor for DOMS on August 1,

23   2007.  Bonner Decl. ¶ 8, Ex. 5, Dkt. 35-2.  He was eventually promoted to volunteer associate

24   clinical professor.  Isvoranu Decl. ¶ 4, Ex. C ("Song Dep. A") at 43:6-11, Dkt. 28-1.  Dr. Song

25   volunteered one half-day per week, on Wednesday mornings, supervising dental students

26   completing clinical education.  Id. at 57:7-22.  Defendant Brian Bast, M.D., D.M.D. ("Dr. Bast"),

27   is DOMS' Chair.  Bast Decl. ¶ 2, Dkt. No. 28-2.  Dr. Song is one of Dr. Bast's former students,

28   and according to Dr. Bast, the two "got along."  Id. ¶ 3.  Defendant John Featherstone, Ph.D.

United States District Court
Northern District of California

("Dean Featherstone"), was Dean of USCF's School of Dentistry from 2007 until his retirement in December 2017.  Featherstone Decl. ¶ 3, Dkt. 28-3.  Dr. Song and his wife were former students of Dean Featherstone, and Dean Featherstone considered himself a mentor to Dr. Song.  Id. ¶ 4; see also Opp'n at 4, Dkt. 35 (referring to Dr. Featherstone as Dr. Song's mentor).

On May 8, 2016, Dr. Song sent Dr. Bast an email regarding concerns he had about patient care and the quality of instruction in DOMS.  See Bast Decl. ¶¶ 5, 8 & Ex. A at 1025-1027 (the "May 2016 Email").  Dr. Song had previously discussed his concerns with Dr. Bast, but felt they were not properly being addressed.  Id.  Among other things, Dr. Song raised concerns about gaps in students' predoctoral clinical knowledge, such as a lack of basic knowledge about antibiotic prophylaxis, local anesthetic, and pain medications; poor execution and incomplete implementation by the Department of a transition from paper to electronic medical records; unsigned patient records and incomplete chart notes; and improper maintenance and functioning of the Department's nitrous oxide and oxygen systems.  Id.  According to Dr. Bast, he asked Dr. Song to work with Jennifer Perkins, D.D.S., M.D. ("Dr. Perkins") to resolve his concerns.  Bast. Decl. ¶ 8.  Dr. Perkins is the Course Chairperson at DOMS and leads the Department's efforts to provide comprehensive didactic education and clinical training to students.  Id. ¶ 7.

On April 7, 2017, Dr. Song sent Dr. Bast another email.  Bast Decl. ¶ 9, Ex. A at 1023-1025 (the "April 2017 Email").  He began:

> *I am writing to inform you that I would like to take a leave (sabbatical) from the Department starting July 1st, 2017.*  It is with great difficulty that I do this, as I have been faithfully teaching clinically and didactically for the last 11 years, starting with my chief resident year in our program.  Much of enjoyment that I had teaching students and residents has now been replaced by complete fear of coming into the clinic and leaving frazzled having dealt with: concern for patient safety and care, disorganized systems and structure, and lack of appropriate training of students.

Id. (emphasis added).  Dr. Song stated that he had reported his concerns about DOMS to Dr. Perkins and that, while "some areas ha[d] improved," most remained "unsolved."  Id.  After sharing his "continuing concerns" regarding DOMS, he concluded:

> I realize that this is a complex issue logistically, financially, and not just within the department, but also the school. . . . *I cannot continue in this fashion* and watch the safety of patients and the education of

3

1

> students being compromised. . . . *I would like to return, but the teaching environment has deteriorated to the point that I need a break for the time being.* . . . I am happy to meet with you if feel [*sic*] it is necessary and/or appropriate.

Id. (emphasis added).

On April 7, 2017, Dr. Song sent an email to Sam Hawgood, Chancellor of UCSF ("Chancellor Hawgood"), forwarding his May 2016 and April 2017 Emails.  See Bonner Decl. ¶ 11, Ex. 8.  He added:

> When I was a dental student, I was the school president and had aspirations to be in school administration and be dean of a dental school excited to instill a larger purpose for education.  Maybe I still do, but in my lowly position, I have been powerless to effect any change and *at this point, planning to move on.*
>
> I apologize for the length of these emails, but they are a result of years of neglect and frustration.  I do appreciate any time you give to reading as *I felt it would have been unprofessional of me to leave without stating my concerns for the well[-]being of the students and university*.  Thank you.

Id. (emphasis added).

According to Dr. Bast, he understood Dr. Song's April 2017 Email to convey that Dr. Song did not wish to volunteer in DOMS for the next academic year.  Bast Decl. ¶ 18; see Isvoranu Decl. ¶ 2, Ex. A ("Bast Dep. A") at 60:5-21, 61:6-63:13.  He responded to Dr. Song by email three days later, on April 10, writing:

> Thank you Dennis for your thoughtful note.  I am sorry to hear that you will be taking some time away from the school.  We have considered all of your comments and remain committed to constantly improving the students [*sic*] education and training.  I have discussed these issues with Dr. Perkins and Dean Featherstone.  Please contact me directly with any further concerns.  Always welcome your feedback.

Bast Decl. ¶ 10 & Ex. A at 1023.

Dr. Bast took Dr. Song's concerns seriously and raised them with Dr. Perkins and Dean Featherstone.  Bast Decl. ¶ 9.  Dr. Bast forwarded Dr. Song's April 2017 Email to Dr. Perkins and received a detailed response from her the next day.  Id. ¶ 11, Ex. B.  Dr. Bast forwarded Dr. Perkins' response to Dean Featherstone on April 14, 2017.  Id. ¶ 12, Ex. C.  Dean Featherstone responded on April 14, 2017.  Id.  Dean Featherstone began by complimenting Dr. Perkins on her

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

4

efforts to improve "a situation that has needed improvement for a long time" and applauded both Dr. Perkins and Dr. Bast for moving DOMS in the right direction.  Id.  He continued:

> Unfortunately Dr. Song does not have the smoothest way in which to communicate his opinions, observations and allegations.  There are always faculty who consider that everything was better in the past, when it most likely was not.  However, it seems that there are some very important issues that need to be looked at. ….
>
> I realize that the items listed in [Dr.] Song's communications are his opinions and they may not be the best way to do things.  However, it is a signal to make sure that our house is in order. ….
>
> Please work out a plan of action and share it with me when you have had a chance to work through it.

Id.  Dr. Bast and Dr. Perkins conferred and came up with an action plan.  Id. ¶ 15.  In addition to various action items, Dr. Bast committed to spending one-half day every other week in the clinic to directly observe the process.  Id.  Dr. Bast forwarded the action plan to Dean Featherstone.  Id.

Subsequently, on April 26, 2017, Dr. Bast sent an email to Dean Featherstone detailing a series of complaints he and Dr. Perkins had received from students earlier that day.  Bast Decl. ¶ 20, Ex. G.  He explained that earlier that afternoon, four students had reported to Dr. Perkins that "Dr. Song had been very unprofessional and they were concerned about his behavior in clinic." Id.  Dr. Bast and Dr. Perkins met with the students and listened to their concerns.  Id.  The students reported the following:

> 1.  Dr Song identified one of the 4th years who had matched into our OMFS residency.  He began telling her that she had made a mistake in choosing this program.  He informed her that all of the faculty in this program didn't know anything about the profession and that she would not have a chance of receiving an adequate training.  He repeatedly told her that he felt sorry for her and that she had made a large mistake.  He also told her and the other students that "UCSF Medical School sucks" and that UCD is a much better school.  Dr. Song graduated from UCD Medical School.
>
> 2.  He repeatedly told the 4 dental students that he felt sorry for them because they are going to a bad school.  He told the students that the faculty in the dental school "suck up" to the students because they are only concerned about their evaluations.
>
> 3.  He informed the students that our department is racist and sexist.

Id.  The students further reported that they were "very uncomfortable and concerned," that Dr. Song "was repeatedly insulting the dental school faculty," and that they felt his behavior was "very

United States District Court
Northern District of California

1    unprofessional."  Id.  Dr. Bast expressed: "My own feeling is that Dr. Song should no longer be

2    interacting with our learners in any capacity.  I understand that these are sensitive issues but when

3    this type of behavior touches our students in such a negative way we need to act."  Id.

4            About a month later, on May 27, 2017, Dr. Bast emailed Dr. Song, saying:

5                    In April you gave me notice of your desire to take a break from our
                     department starting July 1, 2017.  I remain appreciative of all that
6                    you have contributed to our student's education and training but I
                     also respect your decision.  *I will plan to not renew your volunteer*
7                    *faculty appointment with our department for the upcoming academic*
                     *year (2017-2018).*
8
9    Bast Decl. ¶ 18, Ex. F (emphasis added).  On May 31, 2017, Dr. Song responded to Dr. Bast and

10   included Dean Featherstone on his email.  He wrote, among other things:

11                   *Please allow me to be clear, I did not ask to resign from my faculty*
                     *appointment.  I am requesting transfer to the Department of*
12                   *Orofacial Sciences and I would hope that you approve that without*
                     *difficulty.*  Please let me know if you have any questions or
13                   concerns.

14   Bonner Decl. ¶ 15, Ex. 12 (emphasis added).

15           Later that day, Dr. Bast forwarded Dr. Song's email to Dean Featherstone and expressed

16   his continued intent not to renew Dr. Song's appointment:

17                   This note from Dennis was in response to an email I had sent him
                     last week.  After you and I and Caroline had met I discussed Dennis'
18                   request to leave my department.  I was informed by HR that I would
                     need to give him a 30[-]day notice in email of the non-renewal of his
19                   appointment.  *My plan remains to not renew his appointment.*

20                   He does ask in his email if I have any concerns.  I do have major
                     concerns about any faculty that speaks to our students the way
21                   Dennis has on many occasions.  He has told our incoming resident
                     that she made a terrible mistake in choosing UCSF, that the medical
22                   school is terrible and that her training would be inadequate.  He has
                     told our students that he is sorry for them, that their education at
23                   UCSF is not good.

24                   I do not plan to respond to this email.  *I do plan to not renew*
                     *Dennis' volunteer faculty appointment.*

25   Id. (emphasis added).

26           On June 20, 2017, after having had dinner with Dean Featherstone, Dr. Song sent an email

27   to Dean Featherstone stating, among other things:

28

                                                    6

> To be clear, I did NOT ask to leave the University. I asked to take a leave from [DOMS] for reasons and fears I have expressed this evening and previously. I requested a transfer to the Department of Orofacial Sciences where I can continue what I have been doing for more than 10 years in a much more supportive environment. I did not understand previously the nuances of this transfer, but I made clear this evening my intent . . . .

Bonner Decl. ¶ 17, Ex. 14. According to Dr. Song, he was unaware prior to providing notice of his intent to take leave that faculty appointments could end and not be renewed. Bonner Decl. ¶ 5, Ex. 2 ("Song Dep. B") at 242:16-243:8.

UCSF policy provides that leave-of-absence credit is earned only by faculty who work at least half-time or meet other conditions that do not apply to volunteer positions. Bast Decl. ¶ 17, Ex. E. To maintain a volunteer appointment, a professor must be willing to teach some number of hours during an academic year. Id. According to Dr. Bast, the non-renewal of Dr. Song's appointment was consistent with this UCSF policy. Bast Decl. ¶¶18-19; Bast Dep. A at 22:19-25, 23:21-24:5, 61:6-63:13, 64:16-65:8, 66:10-19, 67:8-13. Dr. Bast avers that the decision "had nothing to do with the concerns [Dr. Song] raised," but rather, "with his leave notice." Bast Decl. ¶ 19. Additionally, based on the student complaints, Dr. Bast did not believe Dr. Song should continue working with students, "as his behavior appeared to abandon his teaching duties as a professor." Id ¶ 20.

Dr. Bast testified that appointments are "year-to-year." Bast Dep. A at 64:16-25. In response to a question of whether a volunteer can take leave and return, he indicated that the topic "wasn't in [] discussion" in his conversations with Dr. Song. Id. at 64:16-25, 65:6-8. Dr. Bast never told Dr. Song that if he later "decided to come back, his appointment wouldn't be renewed." Id. Dean Featherstone similarly testified that, although he assumed Dr. Song thought "sabbatical" meant "to go away for a while and come back," there is no UCSF "provision for volunteer faculty to take a leave and come back." Bonner Decl. ¶ 7, Ex. 4 ("Featherstone Dep. A") at 49:18-50:7. He explained that volunteer faculty are "never terminated; they're not renewed." Id. Volunteer professors "give up their appointment" when they take a leave; "it's possible for them to come back on," but they "have to start the appointment process over in that case." Id. at 50:7-12.

United States District Court
Northern District of California

**B.      Denial of an Appointment to Pediatrics**

As mentioned above, at some point during his time at UCSF, Dr. Song took an interest in working for another department in the School of Dentistry, the Pediatric Dentistry Division ("Pediatrics"), within the Department of Orofacial Sciences.  Isvoranu Reply Decl. ¶ 2, Ex. A ("Shiboski Dep. A") at 10:8-16, Dkt. No. 36-1.  On October 5, 2016, he shared with Thuan Le, D.D.S., Ph.D. ("Dr. Le"), then-director of Pediatrics, his interest in teaching in that division.  Bonner Decl. ¶ 20, Ex. 17.  On March 30, 2017, he wrote to Dr. Le, stating that he "was planning on leaving [DOMS]," and that he had been "offered a teaching position at UOP [University of the Pacific]" and would "probably take it" but wanted to work with Pediatrics if they could offer him a position.  Isvoranu Reply Decl. ¶ 5, Ex. D.

Caroline Shiboksi, D.D.S., M.Ph., Ph.D. ("Dr. Shiboksi"), was Chair of Pediatrics.  Defs.' Shiboski Dep. at 11:17-20.  She testified that it would be a "little bit unusual" for Dr. Song to teach in Pediatrics because he is an oral surgeon and "there's not a lot of need for . . . the specialty of oral surgery" in Pediatrics.  Id. at 12:2-7.  Dr. Shiboski further testified that, although "it was a bit of an unusual request" she was "willing to entertain" the possibility of offering Dr. Song a "secondary appointment" in Pediatrics "because of Dr. Le's acquaintance with Dr. Song's wife and because they seemed to know each other."  Id. at 12:2-12.

Ultimately it was Dr. Shiboski's decision whether to offer Dr. Song a volunteer position in Pediatrics, id. at 43:21-44:3, and she decided not to do so.  Dr. Shiboski testified that when she reached out to HR to inquire about making a secondary appointment, she learned that Dr. Song no longer had a primary appointment with DOMS, and, as a result, if she gave him an appointment with Pediatrics, it would have to be a primary appointment.  Id. at 13:3-15, 64:13-19.  A primary, as opposed to secondary, appointment would incur "considerable" human resources fees; those costs would be "kind of the initial stumble" to Dr. Song's appointment.  Id. at 13:3-15, 62:25-63:4.  Dr. Shiboski testified that this cost was her "primary reason" for not appointing Dr. Song, because "when you run a large department . . . every expense counts."  Id. at 16:24-17:25.

Dr. Shiboski testified that, at around this same time, she also learned from Dr. Perkins and Dr. Bast that Dr. Song had "expressed … a negative opinion about the residency program in

8

1  [DOMS] in front of students who had just been accepted to the program," and "that kind of raises

2  a red flag."  Id. at 13:16-23; Bonner Decl. ¶ 24, Ex. 21 ("Shiboski Dep. B") at 19:22-20:8.  Dr.

3  Shiboski testified that, although she was happy to have Dr. Song continue as a guest lecturer, the

4  student incident was an "additional factor" in her decision not to offer him an appointment in

5  Pediatrics.  Id. at 19:11-21.

6  **III.   PROCEDURAL HISTORY**

7        On May 20, 2019, Dr. Song filed a Complaint for Damages, alleging seven causes of

8  action.  Dkt. 1.  The First through Third Causes of Action allege claims against Dr. Bast and Dean

9  Featherstone under 42 U.S.C. § 1983, as follows: (1) Deprivation of First Amendment Right of

10  Free Public Concern Speech; (2) Retaliation in Violation of Civil Rights; and (3) Deprivation of

11  Property and Due Process.  The Fourth through Seventh Causes of Action allege state-law claims,

12  as follows: (4) Violation of California Labor Code Section 1102.5, against UCSF; (5) Retaliation

13  in Violation of [California] Health & Safety Code Section 1278.5, against UCSF; (6) Intentional

14  Infliction of Emotional Distress ("IIED"), against Dr. Bast and Dean Featherstone; and

15  (7) Negligence [California] Government Code Section 815.2, against UCSF.

16        Although each claim is styled differently, the First through Fifth Causes of Action allege,

17  in essence, that Defendants terminated Dr. Song's volunteer appointment in retaliation for

18  engaging in protected activity, i.e., raising complaints about DOMS.  See id. ¶¶ 12, 29-61; id. ¶ 52

19  ("Dr. Bast effectively terminated Dr. Song's faculty position because [he] complained about

20  substandard patient care and conditions of the dental school and risks to patient safety").  It is

21  alleged that, as a "further act of illegal retaliation," Dr. Bast "blocked" Dr. Song from obtaining an

22  appointment in Pediatrics.  Id. ¶ 53.  The Sixth and Seventh Causes of Action also allege that

23  Defendants "engaged in extreme and outrageous conduct by retaliating against Dr. Song," id.

24  ¶ 125, and breached their duty of care to Dr. Song by "terminating [his] employment," id. ¶ 129.

25        On February 3, 2021, Defendants filed the instant Motion for Summary Judgment.  Dkt. 28

26  ("Mot.").  In accordance with a stipulated briefing schedule, Dr. Song filed his opposition brief on

27  March 29, 2021, Dkt. 35 ("Opp'n"), and Defendants filed their reply brief on April 5, 2021,

28  Dkt. 36 ("Reply").  The motion is fully briefed and ripe for adjudication.

United States District Court
Northern District of California

9

1

IV.   **LEGAL STANDARD**

2

        A party may move before trial for summary judgment on some or all of the claims or

3

defenses presented in an action.  Fed. R. Civ. P. 56(a).  Summary judgment is proper where there

4

is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

5

law." Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of

6

identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence

7

of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material

8

facts are those that may affect the outcome of the case, and a dispute as to a material fact is

9

genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

10

party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

11

        If the moving party meets its initial burden, the opposing party must then set forth specific

12

facts showing that there is a genuine dispute for trial.  Fed. R. Civ. P. 56(c)(1); Anderson, 477

13

U.S. at 250.  All reasonable inferences must be drawn in the light most favorable to the

14

nonmoving party.  Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir. 2004).  However,

15

it is not the task of the Court "to scour the record in search of a genuine issue of triable fact."

16

Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden "to

17

identify with reasonable particularity the evidence that precludes summary judgment." Id.  To

18

survive summary judgment, the nonmoving party "must set forth non-speculative evidence of

19

specific facts, not sweeping conclusory allegations."  Cafasso, U.S. ex rel. v. Gen. Dynamics C4

20

Sys., Inc., 637 F.3d 1047, 1061 (9th Cir. 2011) (citations omitted).

21

        "While the evidence presented at the summary judgment stage does not yet need to be in a

22

form that would be admissible at trial, the proponent must set out facts that it will be able to prove

23

through admissible evidence."  Norse v. City of Santa Cruz, 629 F.3d 966, 973 (9th Cir. 2010)

24

(citing Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion

25

must be made on personal knowledge, set out facts that would be admissible in evidence, and

26

show that the affiant or declarant is competent to testify on the matters stated.")).

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

## V.   DISCUSSION

### A.   Federal Retaliation Claims

Dr. Song brings three claims against Dr. Bast and Dean Featherstone under section § 1983, alleging that they retaliated against him for raising complaints by terminating his appointment with DOMS and blocking his appointment with Pediatrics.

#### 1.   Standard

"To establish a prima facie case of First Amendment retaliation, a plaintiff must prove that (1) [he] engaged in protected speech; (2) the defendants took an adverse employment action against [him]; and (3) [his] speech was a 'substantial or motivating' factor for the adverse employment action." Howard v. City of Coos Bay, 871 F.3d 1032, 1044 (9th Cir. 2017) (quotation marks and citations omitted). If a plaintiff can demonstrate a prima facie case,

> the burden shifts to the employer to demonstrate either that, under the balancing test established by Pickering v. Board of Education, 391 U.S. 563, 568 (1968), the employer's legitimate administrative interests outweigh the employee's First Amendment rights or that, under the mixed motive analysis established by Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977), the employer would have reached the same decision even in the absence of the employee's protected conduct.

Id. at 1044-45 (additional quotation marks, citations, and alterations omitted).[2]

In their motion for summary judgment, Defendants do not dispute that Dr. Song engaged in protected speech or that he suffered an adverse employment action. Rather, they argue that, based on the undisputed facts, Dr. Song fails to show that his protected speech was a substantial or motivating factor in any adverse employment action. Mot. at 11. Defendants likewise argue that, based on the same undisputed facts, Dr. Song cannot refute the University's showing that it would have taken the same action even absent his alleged protected speech. Id.

---

[2] The parties analyze the First through Fifth Causes of Action as claims of retaliation. See Opp'n at 10-23; id. at 10 ("There Are Triable Issues of Fact as to Dr. Song's Retaliation-Based Causes of Action (First through Fifth)"). The Court therefore analyzes Dr. Song's § 1983 claims under the framework advanced by the parties and set forth above. The Court addresses Dr. Song's claims for retaliation under California law separately, below.

The question of whether protected speech was a "substantial or motivating" factor in an adverse employment action is a question of fact. Eng v. Cooley, 552 F.3d 1062, 1071 (9th Cir. 2009). Mere evidence that the defendant was aware of the protected speech does not create a genuine issue of material fact, however. Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 751 (9th Cir. 2001) (citing Bd. of Cnty. Comm'rs v. Umbehr, 518 U.S. 668, 685 (1996) ("To prevail, Umbehr must show that the termination of his contract was motivated by his speech on a matter of public concern, an initial showing that requires him to prove more than the mere fact that he criticized the Board members before they terminated him."); Gillette v. Delmore, 886 F.2d 1194, 1198-99 (9th Cir. 1989) (affirming partial summary judgment against employee because evidence his employer "knew of his political activities" was "not sufficient to meet his burden" where he had "shown no link between these events and his termination").

Circumstantial evidence can create a genuine issue of material fact on the question of retaliatory motive if the plaintiff "provides evidence that his employer knew of his speech *and* further produces evidence of at least one of the following three types: (1) showing a proximity in time between the protected action and the allegedly retaliatory employment decision such that a jury logically could infer that the plaintiff was terminated in retaliation for his speech; (2) demonstrating that his employer expressed opposition to his speech to him or to others; or (3) showing that his employer's proffered explanations for the adverse employment action were false and pretextual." Howard, 871 F.3d at 1045 (summarizing Keyser, 265 F.3d at 751-52) (quotation marks and internal modifications omitted; emphasis added).

In analyzing the evidence of retaliatory motive, the Court turns first to the non-renewal of Dr. Song's appointment with DOMS, and then to the non-offer of an appointment in Pediatrics.

### 2.    Non-Renewal of Dr. Song's Appointment

In arguing that they are entitled to summary judgment, Defendants assert that uncontroverted evidence shows the catalyst for the non-renewal of Dr. Song's appointment was his April 2017 Email, wherein he conveyed his decision to take an indefinite leave from his volunteer position with DOMS as of July 1, 2017. Mot. at 13. Indeed, Dr. Song admitted that he no longer wanted to work in DOMS when he sent his April 2017 Email. Id. Pursuant to

University policy, volunteer professors are ineligible for personal leave.  Id.  Leave-of-absence

credit is earned only by faculty in specific positions and under limited circumstances, none of

which apply to volunteer positions.  Id.  Thus, Dr. Bast avers, he decided not to renew Dr. Song's

appointment with DOMS, in accordance with University policy, based on Dr. Song's leave notice.

See Bast. Decl. ¶ 19.  According to Dr. Bast, the decision had "nothing to do" with the concerns

Dr. Song raised regarding DOMS.  Id.  In view of the foregoing, Defendants contend there is no

dispute that the non-renewal of Dr. Song's appointment was "solely and legitimately motivated by

[his] stated intent to take an indefinite break from working in … DOMS."  Mot. at 14.[3]

Dr. Song counters that there is a triable issue of fact regarding Defendants' true motives

for, as he describes it, "terminating" his faculty appointment.  Opp'n at 1.  He argues that the

record shows circumstantial evidence of temporal proximity and pretext.  For the reasons

discussed below, the record does not support Dr. Song's arguments; thus, he does not create a

genuine issue of material fact on the question of whether the non-renewal of his appointment was

motivated by his protected speech.

### a.      Temporal Proximity

"[T]iming can properly be considered as circumstantial evidence of retaliatory intent."

Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995).  The Ninth Circuit has "reject[ed] any bright-

line rule about the timing of retaliation," however.  Coszalter v. City of Salem, 320 F.3d 968, 978

(9th Cir. 2003) ("There is no set time beyond which acts cannot support an inference of retaliation,

and there is no set time within which acts necessarily support an inference of retaliation.")  Rather,

---

[3] As an alternative matter, Defendants argue that, even if there were a question of fact regarding
Dr. Bast's motivations, there is no basis for Plaintiff's claims against Dean Featherstone because
the uncontroverted evidence shows Dean Featherstone was not a decision-maker.  Mot. at 14.
Dr. Song argues there is a triable issue of fact as to whether Dean Featherstone "had the power to
impact [his] appointment."  Opp'n at 17.  The evidence offered by Dr. Song does not support this
assertion, however, and Dean Featherstone avers he did not have that power.  Isvoranu Reply
Decl. ¶ 4, Ex. C ("Featherstone Dep. B") at 72:17-73:6; Featherstone Decl. ¶ 11.  In any event,
because the Court finds that Dr. Song does not raise a triable issue of fact as to whether his
protected speech was a substantial or motivating factor in the University's decisions, the Court
need not reach Defendant's alternative argument regarding Dean Featherstone's role.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "[w]hether an adverse employment action is intended to be retaliatory is a question of fact that

2    must be decided in [] light of the timing and the surrounding circumstances." Id.

3            Dr. Song argues, albeit in a cursory fashion, that the "sequence of events proves that [his]

4    request for leave or a sabbatical was simpl[y] a convenient way for Dr. Bast to disguise his

5    retaliatory intent." Opp'n at 11.  According to Dr. Song, "it is significant" that, on April 10, 2017,

6    he "forwarded his complaints" to Chancellor Hawgood, whereas "[p]rior to April 2017, [he]

7    reported his concerns only to Dr. Bast and Dean Featherstone." Id.  Given that Dr. Bast decided

8    not to renew his appointment on or about May 27, 2017, Dr. Song concludes that "Defendants'

9    retaliatory conduct certainly comprises 'temporal proximity.'" Opp'n at 22.  The Court finds this

10   argument uncompelling, as it ignores two crucial factors bearing on the timing of the non-renewal

11   of Dr. Song's appointment.

12           First, Dr. Song ignores the temporal significance of the fact that he sent an email on April

13   7, 2017, informing Dr. Bast that he intended to stop volunteering with DOMS.  Only *thereafter*, on

14   May 27, 2017, did Dr. Bast inform Dr. Song that his appointment would not be renewed for the

15   2017-2018 academic year.  Defendants have shown that the non-renewal of Dr. Song's

16   appointment, following the April 2017 Email, was in accordance with UCSF policy.  Specifically,

17   Dr. Song could not have maintained his appointment while not teaching.  Dr. Song does not rebut

18   the evidence regarding University policy.  Pointing to his history as an alumnus, donor, and

19   volunteer, he asserts that it "simply defies reason that Dr. Bast would justifiably close the door on

20   a doctor with such a high level of engagement with the department, simply because he asked for a

21   sabbatical." Opp'n at 11.  Dr. Song's opinion that the University undervalued his contributions is

22   not evidence of retaliatory motive, however.  Given UCSF's policies, the decision not to renew

23   Dr. Song's appointment for the 2017-2018 academic year does not, in fact, defy reason.

24           Second, it is undisputed that Dr. Song raised his concerns regarding DOMS with Dr. Bast

25   in May 2016 (or, as both the May 2016 Email and the Complaint suggest, potentially even earlier),

26   at least a year before the allegedly retaliatory actions.  He also shared his concerns with Dean

27   Featherstone and, at Dr. Bast's urging, with Dr. Perkins.  Dr. Song presents no evidence from the

28   time between May 2016 and May 2017 to support the inference that Defendants intended to

                                              14

retaliate against him due to the concerns he raised regarding DOMS.  Nor does he present any evidence that Defendants responded to his concerns negatively, even after April 2017.  To the contrary, in May 2016, Dr. Bast asked Dr. Song to work with Dr. Perkins to resolve his concerns.  Dr. Song reported to Dr. Bast in April 2017 that he had been working with Dr. Perkins and that "some areas ha[d] improved," though not to an extent that Dr. Song found satisfactory.  When Dr. Song again raised his complaints in April 2017, Dr. Bast and Dr. Perkins worked to create an action plan, which they shared with Dean Featherstone.  This tends to show that UCSF was neither dismissive of, nor hostile to, Dr. Song's concerns.

Dr. Song's speculation that the mere forwarding of his emails to Chancellor Hawgood in April 2017 gave rise to a retaliatory motive is unsupported.  In view of the forgoing, his attempt to draw an inference of retaliation from the temporal proximity of his email to Chancellor Hawgood and the non-renewal of his appointment, while ignoring the full timeline of events, is unpersuasive.  Considering the totality of the circumstances, the timing of the non-renewal does not support an inference that Dr. Song's protected speech was a substantial or motivating factor.

**b.      Pretext**

Dr. Song also argues that the proffered reason for the non-renewal of his appointment was pretextual.  To create a triable issue of fact concerning retaliatory intent, Dr. Song must produce either direct evidence of pretext, or specific, substantial circumstantial evidence.  See Keyser, 265 F.3d at 753 n.5 ("Mere opinions and beliefs that [the employer's] actions were retaliatory, based on no specific or substantial evidence, are not enough to create a genuine issue of material fact on the issue of pretext.").  Dr. Song fails to do either.

**i.      Dr. Song's Intent in Giving Notice**

Although Dr. Song does not explicitly frame it as evidence of pretext, he asserts that, despite his April 2017 Email giving notice of his intent to take leave, Dr. Bast knew he wanted to keep teaching.  E.g., Opp'n at 12-13; id. at 5 ("Dr. Bast understood that Dr. Song's request for a sabbatical was an indication that he would not be teaching 'for a period of time.'").  Dr. Song

United States District Court
Northern District of California

1    asserts that he did not want to end his appointment, but merely "wanted a break" from DOMS.  Id.

2    at 12.  Dr. Song does not meet his burden of showing a triable issue of fact on this issue.

3         The record shows that, in his April 2017 Email, Dr. Song advised Dr. Bast of his intent to

4    take an indefinite "leave (sabbatical) from the Department starting July 1st, 2017."  Dr. Song

5    expressed that he had reached his decision "with great difficulty," adding that he "would like to

6    return, but the teaching environment ha[d] deteriorated to the point that [he] need[ed] a break for

7    the time being."  Dr. Song did not definitively indicate *when* or *if* he wished to return.  Separately,

8    on March 30, 2017, Dr. Song told Dr. Le that he "was planning on leaving [DOMS]," and that he

9    had been offered a teaching position someplace else and would "probably take it."  He also told

10   Chancellor Hawgood, on April 7, 2017, that he was "planning to move on" but "felt it would have

11   been unprofessional of [him] to leave without stating [his] concerns."  The foregoing evidence

12   belies Dr. Song's assertion that it was "abundantly clear" to anyone at the University that he

13   "expressly wanted to continue with his faculty appointment."  Opp'n at 1.  To the contrary,

14   Dr. Song has admitted that, when he advised of his desire to take leave in April 2017, he "no

15   longer wanted to work" at DOMS.  Song Dep. A at 241:8-12.

16        In any event, whether Dr. Song's statements to the University could reasonably have been

17   read as expressing an intent to return to teaching at DOMS at some unspecified point in the future,

18   they unequivocally expressed an intent *not* to teach for the *2017-2018 academic year*.  Dr. Song

19   advised that he would not be teaching with DOMS beginning July 1, 2017.  Accordingly, Dr. Bast

20   advised that he would not be renewing Dr. Song's appointment for the 2017-2018 academic year.

21   Dr. Song does not contend that he ever asked to be appointed to DOMS for that academic year,

22   and there is no evidence that Dr. Bast refused such a request.  Indeed, even when Dr. Song later

23   stated in emails to Dr. Bast and Dean Featherstone that he "did not ask to resign" from his faculty

24   appointment, he did not ask to remain with DOMS for the 2017-2018 academic year or to return to

25   DOMS for any academic year thereafter.  See Opp'n at 13.  Rather, he expressed his intent to be

26   appointed to another department.  Id.  As discussed below, however, any appointment to Pediatrics

27   was a separate matter, committed to the discretion of Dr. Shiboski.

28

16

United States District Court
Northern District of California

1    Lastly, it is immaterial whether, as Dr. Song asserts, he failed to appreciate the

2  consequences of his request for leave, or whether Dr. Bast failed to promptly advise him of the

3  UCSF policy that prevented volunteer faculty from taking leave. Opp'n at 7. It is also immaterial

4  whether, as Dr. Song suggests, he "told Dr. Bast that he wanted to take leave, not because he

5  wanted to stop teaching but because he wanted to make a statement …." Id. at 5. The pertinent

6  question is whether Dr. Bast honestly believed that Dr. Song intended to stop teaching in DOMS

7  as of July 1, 2017. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002)

8  ("courts only require that an employer honestly believed its reason for its actions, even if its

9  reason is foolish or trivial or even baseless") (quotation marks and citation omitted); see also

10 Risby v. Nielsen, 768 F. App'x 607, 611 (9th Cir. 2019) (even if the defendant's decision "was

11 faulty in some way, an inference of pretext does not arise solely from an honest mistake"); Zamora

12 v. Elite Logistics, Inc., 478 F.3d 1160, 1166 n. 10 (10th Cir. 2007) (employee's "subjective intent

13 is not relevant to the question of how the facts objectively appeared to . . . the decisionmaker"); id.

14 at 1166 (affirming summary judgment for employer because it could "have reasonably believed

15 that [the employee] had actually conditioned his return" on an ultimatum it was unwilling to

16 accept) (citing Gearhart v. Sears, Roebuck & Co., 27 F. Supp. 2d 1263, 1276-77 (D. Kan. 1998)

17 (finding that, even if there was a disputed issue of fact as to whether the employee intended to

18 resign, summary judgment for the employer was appropriate where the employer reasonably

19 believed that the employee resigned, and the employee failed otherwise to offer sufficient

20 evidence that the employer's asserted reason was pretextual), aff'd, 194 F.3d 1320 (10th Cir.

21 1999) (unpublished)). Dr. Song presents no evidence tending to show that Dr. Bast did not

22 honestly hold this belief.

23    **ii.    Dr. Bast's Written Notice of Non-Renewal**

24    Dr. Song also notes that, on May 31, 2017, Dr. Bast sent an email to Dean Featherstone

25 stating that he had been "informed by HR that [he] would need to give [Dr. Song] a 30[-]day

26 notice in email of the nonrenewal of his appointment." Dr. Song argues that "[t]he fact that

27 Dr. Bast went to HR to find out what he needed to do to terminate Dr. Song's appointment and

28

then waited until the last possible moment to provide Dr. Song with notice, is specific, substantial evidence of pretext." Opp'n at 12. The record does not support this assertion.

The events at issue unfolded over less than three months. On April 7, 2017, Dr. Song informed Dr. Bast that he no longer intended to teach as of July 1, 2017. Sometime between April 7 and May 27, 2017, Dr. Bast consulted with HR. In accordance with HR's directives, Dr. Bast then provided Dr. Song written notice of the non-renewal of his appointment on May 27, 2017, approximately 30 days before his appointment was set to end. Dr. Song's suggestion that the University somehow obfuscated by not informing him "at the earliest possible time about the implications and consequences of his requested leave," Opp'n at 12, is simply unfounded. Indeed, nothing in the correspondence between the parties suggests that Dr. Bast attempted to mislead Dr. Song as to the implications of his leave request.

Furthermore, any suggestion that Dr. Bast's consultation with HR is itself evidence of pretext is unfounded. There is no evidence that Dr. Bast contacted HR prior to receiving Dr. Song's April 2017 Email providing notice of his intent to stop teaching. Insofar as Dr. Song advised, *after receiving the 30-day notice from Dr. Bast*, that he did not ask to "resign," Dr. Bast had no knowledge of that prior to his consultation of HR. Thus, there is no inference of a nefarious intent regarding Dr. Bast's consultation with HR.

### iii.    Dr. Bast's "Plan"

Dr. Song also points to Dr. Bast's statement in an email to Dean Featherstone that he did not "plan" to renew Dr. Song's appointment. Opp'n at 8, 14. Based on the use of that word, Dr. Song argues that "Dr. Bast made it his 'plan' to terminate [his] appointment," id. at 1, "irrespective of any attempts by Dr. Song to find an alternative placement in UCSF," id. at 12. See also id. at 8 ("The decision to not renew Dr. Song's appointment was solely a function of Dr. Bast's 'plan.'"). The Court is unpersuaded.

The natural reading of Dr. Bast's statement is that it was his "intent" not to renew Dr. Song's appointment in DOMS. Use of the word "plan" does not, as Dr. Song suggests, support the inference that Dr. Bast revealed to Dean Featherstone some scheme to terminate Dr. Song. If that were not obvious from Dr. Bast's email to Dean Featherstone, it is made obvious by

United States District Court
Northern District of California

1    his May 27 email *to Dr. Song*, which was sent *after* Dr. Song's email expressing his intent to leave

2    DOMS and *before* Dr. Song's email stating that he would like to seek an appointment in another

3    department.  Dr. Bast told Dr. Song: "I will *plan* to not renew your volunteer faculty appointment

4    with our department for the upcoming academic year (2017-2018)." (emphasis added).

**iv.**       **The Student Complaints**

6         In their motion for summary judgment, Defendants further argue that the student

7    complaints about Dr. Song's behavior were "concerning" and "contrary to UCSF's values and

8    goals as a teaching hospital."  Mot. at 15.  According to Defendants, the students' complaints

9    about Dr. Song's behavior "further affirmed that [he] had abdicated his teaching duties as a

10   Volunteer Clinical Professor, consistent with his April 7, 2017 notice that he did not wish to teach

11   in the DOMS after July 1, 2017."  Id.

12        Dr. Song contends that the alleged student complaints were "another pretext to hide

13   Defendant's retaliatory intent."  Opp'n at 13.  In support of this contention, he cites the lack of an

14   investigation by the University and the failure "to simply talk to [him] about the alleged student

15   complaints."  Id.  Separately, Dr. Song argues that any statements he made to the students were

16   protected speech and thus could not serve as a legitimate basis for his termination.  Id. 15-16.  He

17   further argues that evidence of the student complaints is inadmissible hearsay or double hearsay

18   because, according to Dr. Song, the statements are offered for the truth of the matter asserts, i.e.,

19   "that [he] no longer wished to teach."  Opp'n at 14.  These arguments are unsuccessful.

20        As a threshold matter, Dr. Song's hearsay objection is without merit.  As Defendants

21   correctly note, evidence that an employer received complaints regarding an employee's conduct is

22   admissible to show the employer's state of mind.  Haddad v. Lockheed California Corp., 720 F.2d

23   1454, 1457 (9th Cir. 1983) (citing Fed. R. Evid. 803(3)).  When offered for that reason, the

24   evidence is non-hearsay because it is "not offered to prove the truth of the complaints."  Id. (citing

25   Fed. R. Evid. 801(c)); see also Ramirez Rodriguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d

26   67, 76 (1st Cir. 2005) (evidence of statements concerning the employee's conduct were not

27   hearsay because they were not offered to prove that the employee had engaged in misconduct, but

28   rather, to show that his employer had reason to believe he had).  Contrary to Dr. Song's assertion,

19

United States District Court
Northern District of California

1    Defendants do not offer the statements for the truth of the matter asserted, i.e., that Dr. Song acted

2    unprofessionally, but rather, to show that they believed he had done so.  That Defendants also

3    interpreted the complaints as further evidence that Dr. Song no longer wished to teach in DOMS

4    does not alter the analysis.  The student complaints are not offered to show that Dr. Song had

5    abdicated his teaching duties, but rather, that Defendants believed he had done so.

6            Dr. Song's argument that his statements to students were protected speech also fails.  To

7    demonstrate that his speech was protected, Dr. Song bears the burden of showing that it

8    "addressed an issue of public concern."  Eng, 552 F.3d at 1070.  "Speech involves a matter of

9    public concern when it can fairly be considered to relate to any matter of political, social, or other

10   concern to the community."  Id. (quotation marks and citation omitted).  Although the Ninth

11   Circuit has "defined the scope of the public concern element broadly," "there are limits."

12   Desrochers v. City of San Bernardino, 572 F.3d 703, 709-10 (9th Cir. 2009) (quotation marks and

13   citation omitted).  "[S]peech that deals with individual personnel disputes and grievances and that

14   would be of no relevance to the public's evaluation of the performance of governmental agencies

15   is generally not of public concern."  Id. (citations and quotation marks omitted).  The same goes

16   for "speech that relates to internal power struggles within the workplace."  Id. (citations and

17   quotation marks omitted).  Furthermore, "when the subject matter of a statement is only

18   marginally related to issues of public concern, the fact that it was made because of a grudge or

19   other private interest or to co-workers rather than to the press may lead the court to conclude that

20   the statement does not substantially involve a matter of public concern."  Johnson v. Multnomah

21   Cty., 48 F.3d 420, 425 (9th Cir. 1995).

22           Although Dr. Song claims that Dr. Bast's email misrepresented his statements to students,

23   Song Decl. ¶ 11, Dkt. 35-1, he does not dispute the general substance of what Dr. Bast reported.

24   He does not, for example, deny having told students that the faculty at UCSF "suck up" to students

25   or that the students "made a mistake" in choosing UCSF's program.  Instead, although Dr. Song

26   avers that he does not remember exactly what he said, he purports to explain what he meant by the

27

28

United States District Court
Northern District of California

statements.[4]  See, e.g., Song Decl. ¶ 7 ("If I told students that the faculty 'suck up' to the students it was to warn them that they need to take their education into their own hands."); id. ¶ 8 ("If I told a student that he or she made a mistake by coming to UCSF, it could only have been to impress upon them the need to have a wide range of experiences.").  The court "look[s] to what the employee[] actually said, not what they say they said after the fact," however.  Desrochers, 572 F.3d at 711.  The interpretations now proffered by Dr. Song are "not to be found" in the statements attributed to him.  Id. at 712 (citation omitted).  Moreover, Dr. Song does not address the other statements reported by students, e.g., that he "felt sorry for [them]," that UCSF is a "bad school," and that UCD—from which Dr. Song graduated, Song Dep. B at 32:4-8—is a "much better school."  Given the nature of Dr. Song's statements and the fact that he directed them to UCSF students, they appear to be "animated" by his "dissatisfaction" with DOMS.  Desrochers, 572 F.3d at 715 (citation omitted).  They cannot "fairly be considered to relate to a matter of public concern," id. at 709 (citations and quotation marks omitted), and thus, are not protected speech.

Turning to Dr. Song's argument that the student complaints serve as a mere pretext for retaliation, he notes that Dr. Bast did not speak with him about the complaints and that UCSF did not conduct a full investigation.  He argues that "[i]f the complaints were so concerning that Dr. Bast was going to use the complaints as the basis to terminate [his] ten-year teaching career, it would stand to reason that Dr. Bast would at least ask [him] to respond to the allegations."  Opp'n at 14.  But here again, Dr. Song mischaracterizes the record and Defendant's arguments.  In moving for summary judgment, Defendants do not argue that the non-renewal of Dr. Song's appointment was based on any misconduct reported by the students.  Mot. at 15.  Rather, they argue that "the students' consistent reports of [Dr. Song's] behavior further affirmed that [he] had abdicated his teaching duties … consistent with his April 7, 2017 notice that he did not wish to

---

[4] The Court notes that the "mere assertion that [Dr. Song] does not remember" making certain statements to students "is insufficient to create a genuine issue of material fact."  Simpson v. Inter-Con Sec. Sys., Inc., 2013 WL 1966145, at *5 (W.D. Wash. May 10, 2013) (citing Blanford v. Sacramento Cty., 406 F.3d 1110, 1120 (9th Cir. 2005) (holding the district court properly took the defendant's account of events as true for purposes of summary judgment because the plaintiff's testimony that he "did not remember" particular acts was "not sufficient to allow a reasonable jury to conclude that [he] did not do these things").

teach in the DOMS after July 1, 2017." Id.  Indeed, although Dr. Bast appears to have considered the student complaints, he avers that his decision not to renew Dr. Song's appointment was based on the April 2017 Email giving notice of Dr. Song's intent to take an indefinite leave from teaching and in accordance with UCSF policy that volunteer professors may not maintain an appointment while not teaching.  Dr. Song ignores the fact that he gave notice before the students made any complaints.  Since Dr. Song had already notified Dr. Bast of his decision to stop teaching, and Dr. Bast cites that as the basis for his decision not to renew Dr. Song's appointment, Dr. Bast's handling of the student complaints does not support an inference that the *basis* for his decision was pretextual.

### 3.    Non-Appointment to Pediatrics

Regarding Dr. Song's claim that the decision not to offer him an appointment with Pediatrics constitutes a further act of retaliation, Defendants argue that the uncontroverted evidence shows Dr. Bast had no authority over that matter.  Mot. at 14.  Dr. Bast and Dr. Shiboski both testified to this fact, which was confirmed by Dean Featherstone.  See Featherstone Decl. ¶ 11 (each department Chair has authority to make and renew appointments for his or her department); Featherstone Dep. B at 72:17-73:6 (same).  Dr. Shiboski was the ultimate decisionmaker and she decided not to offer Dr. Song an appointment.  Mot. at 14.  Dr. Bast avers that he did not prevent Dr. Song from receiving an appointment in Pediatrics.  Bast. Decl. ¶ 21.

Dr. Song concedes that Dr. Shiboski had ultimate authority over whether to appoint him to Pediatrics.[5]  He argues, however, that Dr. Bast was the "moving force behind the decision in [a] protracted campaign to 'blackball' [him] within UCSF."  Opp'n at 17.  Dr. Song asserts that Dr. Shiboski decided not to offer him an appointment because Dr. Bast told her that Dr. Song "should

---

[5] To show Dr. Bast had some role in the matter, Dr. Song asserts that both Dr. Shiboski and Dr. Bast would have to approve a move from DOMS to Pediatrics.  Opp'n at 18.  The record does not support this, however.  Dr. Shiboski testified that, if they were to "switch an appointment from one department to the other," then both chairs would "have to sort of approve this," but since Dr. Song's appointment with DOMS had expired, she did not require Dr. Bast's approval to appoint Dr. Song to Pediatrics.  Shiboski Dep. B at 39:11-40:4; see id. Shiboski Dep. A at 88:7-22, 103:25-104:8.

1  not be interacting with UCSF students." Id. at 18.  For the reasons set forth below, Dr. Song does

2  not raise a triable issue of fact as to this issue.

3       As an initial matter, Dr. Song ignores Dr. Shiboski's testimony that her "primary reason"

4  for not offering him an appointment in Pediatrics was that he no longer had a primary appointment

5  with DOMS, and that providing him a primary (as opposed to a secondary) appointment in

6  Pediatrics would incur considerable costs.  Dr. Song also ignores Dr. Shiboski's testimony that she

7  was initially willing to consider offering him a secondary appointment because Dr. Le was

8  acquainted with Dr. Song's wife, but that it would have been unusual for an oral surgeon, such as

9  Dr. Song, to teach in Pediatrics, because there is little need for such services in that department.

10  Dr. Song does not present any evidence that Dr. Shiboski's *primary* reason for deciding not to

11  offer him an appointment was pretextual.  His failure to contend with these facts is telling.

12       Regarding the student complaints, Dr. Shiboski testified that she learned of the incident

13  from Dr. Perkins and Dr. Bast.  Although she was willing to have Dr. Song continue giving guest

14  lectures in Pediatrics, the student complaints served as an additional consideration in her decision

15  not to offer him an appointment.  Aside from the mere fact that Dr. Bast informed Dr. Shiboski of

16  the student complaints, however, there is no evidence he "blocked" Dr. Song's appointment to

17  Pediatrics or attempted to exert influence over Dr. Shiboski's decision.  The mere fact that

18  Dr. Bast informed Dr. Shiboski of the student complaints does not, standing alone, raise a triable

19  issue of fact as to whether he acted with retaliatory motive to block Dr. Song's appointment to

20  Pediatrics, particularly where Dr. Song has failed to raise a triable issue of fact as to whether his

21  protected speech—the concerns he raised about DOMS to UCSF administration—was a

22  substantial or motivating factor in Dr. Bast's decision not to renew his appointment in DOMS.

23            **4.    Summary**

24       Dr. Song has failed to show that his protected speech was a substantial or motivating factor

25  in Defendants' decisions not to renew his appointment with DOMS and/or not to offer him an

26  appointment with Pediatrics.  Accordingly, Defendants are entitled to summary judgment on

27  Dr. Song's First through Third Causes of Action.

28

United States District Court
Northern District of California

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

###### B.      State Retaliation Claims

Dr. Song also brings retaliation claims under California Labor Code section 1102.5(b) and California Health and Safety Code section 1278.5.  Labor Code section 1102.5, subdivision (b), prohibits retaliation by "[a]n employer, or any person acting on behalf of an employer" against an employee "for disclosing information to . . . a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation …."  Cal. Lab. Code. § 1102.5(b).  Health and Safety Code section 1278.5 prohibits retaliation by a health facility or an entity that owns or operates a health facility against an employee who "[p]resented a grievance, complaint, or report to the facility" regarding unsafe patient care or conditions.  Cal. Health & Safety Code § 1278.5(a), (b)(1)(A), 2; see also Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1105 (9th Cir. 2008) ("The statute prohibits retaliation against any employee who complains to an employer or a government agency about unsafe patient care or conditions.").

The analysis under Labor Code section 1102.5 and Health and Safety Code section 1278.5 is in substance no different than the analysis for Dr. Song's federal retaliation claims.  To establish a prima facie case of retaliation under either statute, a plaintiff must show that: (1) he or she engaged in protected activity under the statute; (2) the employer subjected the plaintiff to an adverse employment action; and (3) a causal link between the two.  Akers v. Cnty. of San Diego, 95 Cal. App. 4th 1441, 1453 (2002) (citations omitted); Jadwin v. Cty. of Kern, 610 F. Supp. 2d 1129, 1144 (E.D. Cal. 2009) (citing Mendiondo, 521 F.3d at 1105 ("[Plaintiff] must allege facts similar to her retaliation claims: that she was terminated based on her complaints ….")).  If the plaintiff makes such a showing, the burden shifts to the defendant to show a legitimate, non-retaliatory reason for the adverse action.  Akers, 95 Cal. App. 4th at 1453; see also Armin v. Riverside Cmty. Hosp., 5 Cal. App. 5th 810, 829 (2016) (citation omitted).

As stated above, the parties address the First through Fifth Causes of Action together, without separate analysis of Dr. Song's state-law retaliation claims.  For the reasons discussed

24

1    above regarding Dr. Song's federal-law claims, see supra, Section V(A), Defendants prevail on the

2    state-law retaliation claims as well.  Accordingly, Defendants are entitled to summary judgment

3    on Dr. Song's Fourth and Fifth Causes of Action.

4         **C.   IIED Claim**

5         Dr. Song brings a claim for intentional infliction of emotional distress against Dr. Bast and

6    Dean Featherstone.  "A prima facie case of [IIED] 'requires (1) outrageous conduct by the

7    defendant, (2) intention to cause or reckless disregard of the probability of causing emotional

8    distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional

9    distress.'"  Schneider v. TRW, Inc., 938 F.2d 986, 992 (9th Cir. 1991) (quoting Cole v. Fair Oaks

10   Fire Protection Dist., 43 Cal.3d 148, 155 n.7 (1987)).  "Conduct, to be 'outrageous,' must be so

11   extreme as to exceed all bounds of that usually tolerated in a civilized society."  Id. (quotation

12   marks and citations omitted).

13        Defendants argue that they are entitled to summary judgment on Dr. Song's IIED claim

14   because their alleged conduct was "not even improper," much less so extreme as to exceed the

15   bounds of that tolerated in a civilized society.  Mot. at 16.  Dr. Song counters that Defendants'

16   motion for summary judgment must be denied because he has presented evidence that they refused

17   to renew his appointment in retaliation for voicing concerns regarding DOMS.  Opp'n at 23.  He

18   again argues that "Dr. Bast's May 31, 2017 email provides conclusive evidence of … ill will

19   towards [him]" because "[i]t was Dr. Bast's plan not to renew [his] appointment" regardless of his

20   request to continue in another department.  Id.

21        For the same reasons discussed above, see supra, Section V(A), Dr. Song has not presented

22   a triable issue of fact on the issue of retaliation.  Dr. Song thus fails to provide evidence that

23   Defendants' conduct was inappropriate, much less that it was "outrageous."  Accordingly,

24   Defendants are entitled to summary judgment on Dr. Song's Sixth Cause of Action.

25        **D.   Government Code section 815.2 Claim**

26        Dr. Song brings a claim for negligence against UCSF under California Government Code

27   section 815.2.  Section 815.2 "imposes upon public entities vicarious liability for the tortious acts

28   and omissions of their employees."  Becerra v. Cty. of Santa Cruz, 68 Cal. App. 4th 1450, 1461

United States District Court
Northern District of California

25

(1998); Cal. Gov't Code § 815.2(a).  It further provides that, "[e]xcept as otherwise provided by statute," Cal. Gov't Code § 815.2(b), "a public entity cannot be held liable for an employee's act or omission where the employee himself or herself would be immune."  Becerra, 68 Cal. App. 4th at 1461.  "[S]ection 815.2 simply applies principles of vicarious entity liability," Caldwell v. Montoya, 10 Cal. 4th 972, 989 n.9 (1995); it does not create a substantive right of action, Hearns v. Gonzales, 2018 WL 1790800, at *2 (E.D. Cal. Apr. 16, 2018) (citations omitted).

Defendants argue that they are entitled to summary judgment on Dr. Song's Seventh Cause of Action because section 815.2 does not create a substantive right of action.  They further argue that Dr. Song "has not alleged any claim of negligence against Dr. Bast or Dean Featherstone in the first instance" to support a claim of vicarious liability against UCSF and that UCSF is immune from suit for claims of damages under the Eleventh Amendment.  In response, Dr. Song contends that he has "more than reasonably stated a claim under Section 815.2."  Opp'n at 24.  He appears to abandon any claim of negligence, however, and instead relies on section 815.2 to hold UCSF liable for the acts of its employees in violation of Labor Code section 1102.5.  Id.[6]

As stated above, see supra, Section V(B), Defendants prevailed on Dr. Song's claim for violation of Labor Code section 1102.5.  Accordingly, Defendants are entitled to summary judgment on Dr. Song's Seventh Cause of Action as well.

## VI.   CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' Motion for Summary Judgment is GRANTED.  Judgment shall be entered in favor of Defendants.  This Order terminates Docket 28.

IT IS SO ORDERED.

Dated: 09/30/2021

SAUNDRA BROWN ARMSTRONG
Senior United States District Judge

_____

[6] Notably, an employer is liable for "the acts of his managers, officers, agents, and employees" under Labor Code section 1102.5 without resort to section 815.2.  Cal. Labor Code § 1104.